JOHN   T.   BARNARD,   as   Temporary   Administrator,   etc.,
    Respondent, *v.* JOHN T. GANTZ et al., Appellants.

*It seems,* that where the findings of fact by a referee have been reversed by
    the General Term, to sustain the reversal on appeal to this court it must
    appear that his findings were against the weight of evidence, or that the
    proof so clearly preponderates in favor of a contrary result that it can
    be said with reasonable certainty that his conclusions were erroneous.

Dealings between parties resulting in a benefit conferred upon or an
    advantage gained by one holding such a confidential relation to the
    other that dependence or trust is justifiably reposed in the former, cast
    upon him the burden of showing that the transaction was free from
    fraud, and that the other party acted freely and intelligently.

Where a common-law seal is absent from an instrument required to be
    under seal, but it shows upon its face that the party executing it
    intended to seal it, a court of equity will assume that it is sealed, and
    grant the same relief as if such a seal was attached.

C., a woman eighty years of age, executed and delivered to H., her son-
    in-law, who was also her trusted and confidential adviser and agent, and
    to her son J., an instrument under seal, by which she conveyed to them
    certain railroad bonds, which had been for some time previous in the
    custody of H., in trust to pay a portion of the income to each of certain
    beneficiaries named during life, and upon the death of each the princi-
    pal to go to the trustees. No power of revocation was reserved in the
    instrument. H. died and C. executed another instrument by which
    S. was appointed trustee in the place of H. C. thereafter executed an
    instrument, revoking and annulling the trust deed and the appointment
    of S. In an action to procure a revocation of the trust, the referee
    found that C. did not, at the time of the execution and delivery of the
    first instrument, know that its legal effect was to make the disposition
    of the bonds irrevocable. It appeared that at the time she signed the
    instrument S., although the bulk of her property was apparently dis-
    posed of thereby, also executed a will. *Held,* that, under the circum-
    stances, it devolved upon the trustees to show that the transfer was the
    voluntary, intelligent act of the party making it, and that its nature
    and effect were clearly understood by her, and as the proof did not
    warrant that conclusion, the General Term was warranted in reversing
    the judgment entered upon the report of the referee in favor of the
    defendant.

C. brought this action to reform the trust instrument by inserting therein
    a power of revocation. Subsequently she died, and plaintiff, as her
    executor, was appointed temporary administrator. The action was by
    order of the court revived, and plaintiff permitted to serve a supple-
    mental complaint as "he may be advised." Such complaint stated all the

facts, including the revocation. The relief demanded was a reform of the instrument, and that the trustees deliver up the bonds to plaintiff or account for the same, and for other relief. *Held*, that the allegations as to the revocation of the trust did not relate to matters occurring subsequent to the commencement of the action, and so were not properly inserted in the supplemental complaint; but as it did not appear defendants made any motion to correct it, and it did appear that on the trial plaintiff requested leave to amend the complaint by inserting the same allegation, which was granted without objection or exception, the action might be regarded as one to make an actual revocation of the two instruments effective, and it appearing that a power of revocation should have been inserted, equity would regard it as done.

Also, *held*, that the instrument was not ratified by the application for and the appointment of a new trustee, in the absence of evidence that C. then had information that the paper was not, in its terms and legal effect, what she intended it to be; that to effect a ratification it was necessary to show that she intended such a result after knowledge of all the facts.

It was claimed by defendants that the instrument of revocation was inoperative, as it was not under seal and was not delivered. The signature of C. is followed by the letters L. S. in brackets. *Held*, that as this evidenced an intention to seal the instrument, it would, if necessary, be considered as sealed; but that as the trust instrument was a mere assignment of personal property, a seal was not requisite; and that, in the absence of any provision in the trust instrument as to the method of revocation, neither a seal or delivery was necessary to the validity of the revocation.

(Argued October 24, 1893; decided November 28, 1893.)

APPEAL from a judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made December 12, 1892, which reversed a judgment in favor of defendants entered upon the report of a referee and granted a new trial.

This action was brought originally in September, 1890, by Ann E. Crouse, plaintiff's intestate, to reform a trust deed executed by her, and to establish her right to alter or revoke the disposition of her property made therein, and for a delivery of the property therein described, or of any property taken in place thereof, and for an accounting and paying over of any income not previously paid over.

Ann E. Crouse died in June, 1891, and plaintiff, an exec-

utor under her will, having been appointed temporary administrator, the action was continued in his name.

Further facts are stated in the opinion.

*L. E. Warren* for appellants. The referee having decided upon conflicting evidence, and there being sufficient evidence in the case to support his findings, the General Term should affirm the judgment, even though the same evidence in its opinion might, in the first instance, have warranted a contrary conclusion. (*Baird* ·v. *Mayor, etc.*, 96 N. Y. 567; *Roosa* v. *Smith*, 17 Hun, 138; *Aldridge* v. *Aldridge*, 120 N. Y. 614.) The appellant having omitted any statement that the case contains all the evidence given upon the trial, the General Term had no right to reverse the judgment upon questions of fact. This question was distinctly raised at General Term. (*Porter* v. *Smith*, 107 N. Y. 531; *Halpin* v. *Ins. Co.*, 118 id. 165; *Aldridge* v. *Aldridge*, 120 id. 614; *Lowery* v. *Erskine*, 113 id. 52; *Flack* v. *Vil. of Green Island*, 122 id. 117; *Travis* v. *Travis*, Id. 449.) The referee's conclusion of law that the complaint should be dismissed is sustained by a great preponderance of evidence, and is correct. (*Harnett* v. *B. S., etc., R. Co.*, 17 J. & S. 185; *Cudney* v. *Cudney*, 68 N. Y. 148; *Fellows* v. *Heermans*, 4 Lans. 230; *Dupre* v. *Thompson*, 4 Barb. 279; *Hunt* v. *Rousmaniere*, 1 Pet. 1.) No incompetent evidence was admitted or competent evidence rejected which has affected the result, in violation of substantial justice. (*Hobart* v. *Hobart*, 62 N. Y. 80; *Foote* v. *Beecher*, 78 id. 155; *Bardin* v. *Stephenson*, 75 id. 164; *Bank* v. *Dearborn*, 20 id. 244; *Forrest* v. *Forrest*, 25 id. 501, 510; Code Civ. Pro. §§ 829, 835.) The issues raised by the supplemental complaint were not properly in the case, and they must be disregarded by the court. (Code Civ. Pro. § 723; *Bockes* v. *Lansing*, 74 N. Y. 437; *Joslyn* v. *Joslyn*, 9 Hun, 388; *Dudley* v. *Scranton*, 57 N. Y. 424; *Tiffany* v. *Bowerman*, 2 Hun, 643; *Slauson* v. *Englehart*, 34 Barb. 198.) The trust deed of August 24, 1883, was not revoked on July 30, 1890, or at any time in the lifetime of Ann E.

Crouse. (*Allen* v. *Jaquish*, 21 Wend. 628; *Eddy* v. *Graves*, 23 id. 82; *Howard* v. *Cooper*, 1 Hill, 44; *Bronson* v. *Fitzpatrick*, Id. 185; *Fisher* v. *Hall*, 41 N. Y. 416; *Day* v. *Mooney*, 6 T. & C. 382; *Jackson* v. *Perkins*, 2 Wend. 308, 315; *Younge* v. *Guilbeau*, 3 Wall. 636.) The action abated by the death of Mrs. Crouse. (Code Civ. Pro. § 755; *C. S. S. Co.* v. *Voorhis*, 104 N. Y. 525; *Matthews* v. *Canal Co.*, 20 Hun, 427; *McKeen* v. *Fish*, 33 id. 28; *Brackett* v. *Griswold*, 103 N. Y. 425.) As the granting of a new trial and the further prosecution of this action cannot result in a judgment for plaintiff, the dismissal of the complaint should be affirmed. (Redf. Sur. Prac. 256; *Greenwood* v. *Holbrook*, 111 N. Y. 465; *Griswold* v. *Sawyer*, 125 id. 411; *Moore* v. *Hegeman*, 6 Hun, 290.)

*Sidney Williams* for appellants Gantz.

*E. B. Barnum* and *George G. Barnum* for respondent. The objection that the relief demanded in the supplementary complaint, made after the death of the plaintiff, goes beyond the relief demanded in the original complaint and constitutes a new cause of action, is untenable. (*Verdier* v. *Baker*, 83 N. Y. 160; *Borst* v. *Corey*, 15 id. 505; *Young* v. *Young*, 80 id. 422; *Bank of Commerce* v. *R. Co.*, 10 Hun, 1.) The revocation was complete when executed. (*Town of Solon* v. *N. S. Bank*, 114 N. Y. 134; *Brookshire* v. *Brookshire*, 47 Am. Dec. 341; *Peckler* v. *State*, 18 Ind. 266; *United States* v. *Jarvis*, Davis [U. S.], 274; *Barry* v. *Lambert*, 98 N. Y. 300; *Gilman* v. *McArdle*, 99 id. 451.) Susie H. Clark and Lillie L. Hall have no interest or rights under the trust deed. (*Greenwood* v. *Holbrook*, 111 N. Y. 465; *Griswold* v. *Sawyer*, 125 id. 411; *Peckler* v. *State*, 18 Ind. 266.) A court of equity will relieve a party from the effects of a voluntary settlement in trust for the settlor for life with remainder over, and reserving no power of revocation where it appears that, although the settlor received proper professional advice from her attorneys who drew the deed, and who were the trustees

thereunder, she did not comprehend its effect nor intend to make an irrevocable deed of her property. (*Conkling* v. *David*, 14 Abb. [N. C.] 499; *Garnsey* v. *Mundy*, 24 N. J. Eq. 243; Code Civ. Pro. § 1207; *Murtha* v. *Curley*, 90 N. Y. 372; *Van Rensselaer* v. *Van Rensselaer*, 113 id. 208, 214; *Bell* v. *Merrifield*, 109 id. 202, 207.) The referee ruled that a witness could not testify to a portion of the contents of a will, unless he could first swear he knew its entire contents. This was erroneous. (*McBurney Case*, 18 Barb. 209, 210.)

O'BRIEN, J.   In this case the General Term has reversed the judgment in favor of the defendants, entered upon the report of a referee dismissing the complaint, upon questions of fact.   It is, therefore, one of the cases where this court is authorized and required to review the facts.   (Code, § 1338.) In order to sustain the reversal of the decision of the referee, it must appear that his findings are against the weight of evidence, or that the proofs so clearly preponderate in favor of a contrary result that it can be said with a reasonable degree of certainty that his conclusions were erroneous. (*Baird* v. *Mayor, etc.*, 96 N. Y. 567; *Aldridge* v. *Aldridge*, 120 id. 614; *Devlin* v. *Greenwich Savings Bank*, 125 id. 756; *Roosa* v. *Smith*, 17 Hun, 138.)

There is practically no dispute in regard to the main facts upon which the plaintiff demanded relief.   On the 24th of August, 1883, Ann E. Crouse, then eighty years of age, and being the owner of certain railroad bonds of the value of $33,000, executed and delivered to one Washington Hall, her son-in-law, who was and for some time had been her trusted and confidential financial adviser and agent, and to her son, the defendant John T. Gantz, an instrument under seal, called a trust deed, by which she transferred to them the bonds mentioned, to have and to hold the same upon the following trust: To receive and collect the income arising therefrom and pay the same over to her during the term of her natural life, and after her death to pay the income of $10,000 of the bonds to

her son George H. Gantz during his natural life, and upon his death then to be distributed equally between the trustees to whom the transfer was made, or their legal representatives. To pay the income of $10,000 more of the bonds to her son Joseph W. Gantz during the term of his natural life, and upon his death to divide and distribute them equally to the trustees or their legal representatives. The balance of the bonds, amounting to $13,000, were to be delivered to Hall or his legal representatives. The deed upon its face reserved no power of revocation in the settlor. On February 8, 1885, Hall died, leaving a will in which the defendant Susan E. Hall was named as executrix, and on April 2, 1885, Mrs. Crouse, by another instrument under seal and acknowledged, appointed the defendant Starkey trustee in his place. On the 13th day of July, 1890, she executed an instrument revoking, annulling and declaring void the trust deed and the appointment of Starkey as trustee. She then brought this action to reform the trust deed by inserting therein a power of revocation in order to conform to her intention, and that of all the parties when it was executed    Subsequently, and on the 19th of June, 1891, while the action was pending, she died, leaving a will in which the plaintiff was named as one of the executors. He was subsequently appointed temporary administrator of her estate, and by an order of the court the action was revived and continued in his name upon a supplemental complaint which he was permitted to file and serve. The complaint stated all the facts, including the revocation of the deed, and the appointment of the new trustee. The relief demanded was that the instrument be reformed as above specified, and that the trustees, Gantz and Starkey, deliver to the plaintiff the bonds, or any property substituted for them, and account and pay over to the plaintiff the income not previously paid to Mrs. Crouse in her lifetime, and for such other relief as might be just and equitable. The order of the court permitted the plaintiff to serve a supplemental summons and complaint " as he may be advised," and the allegations to the effect that. the trust deed and

appointment of Starkey to succeed Hall had been revoked by Mrs. Crouse in her lifetime, were new, as no such allega-tions were inserted in the original pleading. As these alle-gations did not relate to matters which had transpired subse-quent to the commencement of the action, it is doubtless true that they were not properly inserted in a supplemental plead-ing, but it does not appear that the defendants made any motion to correct it, and it does appear that upon the trial the plaintiff requested the referee to permit an amendment to the complaint by inserting the same allegations, and the request was granted without any objection or exception. If this is still to be regarded as an action to reform the instru-ment so as to permit the power of revocation to be exercised, the death of the party who made the transfer would probably be an answer to it, as that power, if it was within the intention of the parties, was personal and would not survive. But, as the pleadings now stand upon the record, the action may be regarded as one to make an actual revocation of the two instruments by Mrs. Crouse in her lifetime effective and to recover the property transferred. If it appears that the power to revoke should have been expressed in the instrument, a court of equity will now regard as done whatever the parties really intended, and which in good conscience should have been done, and thus the relief will be adapted to the exigencies of the case. ( *Van Rensselaer* v. *Van Rensselaer*, 113 N. Y. 208, 214; *Bell* v. *Merrifield*, 109 id. 202, 207; *Murtha* v. *Curley*, 90 id. 372; *Valentine* v. *Richardt*, 126 id. 272; Code, § 1207.)

The most important question, however, arises upon the evi-dence which was before the referee, and upon which his judg-ment denying the relief sought was based. It cannot be said that his conclusion is not sustained by any evidence so as to make the question before us one of law. But, we think, the evidence was of such a character as to warrant the General Term, in the exercise of its undoubted power to review his findings, in arriving at a contrary result. The referee found that Mrs. Crouse did not, at the time of making and delivering

the instrument, know that its legal effect was to make the dis-
position of the bonds irrevocable, and thus place the title
beyond her control. This is equivalent to a finding that she
did not understand the nature and effect of the instrument to
which she attached her signature. The bonds were then and
for some time before had been in the possession and custody
of Hall, one of the assignees and trustees, who was not only
connected with her by marriage, but for many years had been
her confidential adviser, and occupied relations of trust and
confidence to her, and the other assignee and trustee was her
son. The evidence tends to show that at the time she signed
the deed she also executed her will, though the bulk of her
property was apparently disposed of under the deed. What
the contents of the will were does not distinctly appear, as the
proof tended to show that it had been destroyed, but as she
executed one instrument which was clearly revocable and
another which apparently was not, it is easy to see how she may
have been confused and misled. Considering her advanced
age, the relations of the parties to whom the transfer was
made to her, the confidence which she evidently reposed in
them and their interest in the transaction, the case comes fairly
within the equitable rule which casts upon the parties who
were benefited by the transaction, the burden of showing that
the transfer was the voluntary, intelligent act of the party who
made it and that its nature and effect was fully understood.
In order to get a clear view of the application and extent of
this doctrine, it is only necessary to refer to the expressions of
opinion in this court, notably in two cases. In *Cowee* v. *Cornell*
(75 N. Y. 99), Judge HAND, for the court, stated the rule in the
following language :

" It may be stated as universally true that fraud vitiates all
contracts, but as a general thing it is not presumed, but must
be proved by the party seeking to relieve himself from an
obligation on that ground. Whenever, however, the relations
between the contracting parties appear to be of such a char-
acter as to render it certain that they do not deal on terms of
equality, but that either on the one side, from superior knowl-

edge of the matter derived from a fiduciary relation, or from overmastering influence, or on the other, from weakness, dependence or trust justifiably reposed, unfair advantage in a transaction is rendered probable, then the burden is shifted, the transaction is presumed void, and it is incumbent upon the stronger party to show affirmatively that no deception was practiced, no undue influence was used, and that all was fair."

In a subsequent case Judge ANDREWS stated the rule in these words, which sufficiently show the wide extent to which the principle has been applied in cases of this character:

"Undue influence, which is a species of fraud, when relied upon to annul a transaction *inter partes*, or a testamentary disposition, must be proved, and cannot be presumed. But the relation in which the parties to a transaction stand to each other is often a material circumstance, and may of itself, in some cases, be sufficient to raise a presumption of its existence. Transactions between guardian and ward, attorney and client, trustee and *cestui que* trust, or persons one of whom is dependent upon and subject to the control of the other, are illustrations of this doctrine. Dealings between parties thus situated, resulting in a benefit conferred upon, or an advantage gained by the one holding the dominating situation, naturally excite suspicion, and when the situation is shown, then there is cast upon the party claiming the benefit or advantage, the burden of relieving himself from the suspicion thus engendered, and of showing, either by direct proof or by circumstances, that the transaction was free from fraud or undue influence, and that the other party acted without restraint and under no coercion, or any pressure, direct or indirect, of the party benefited. This rule does not proceed upon a presumption of the invalidity of the particular transaction, without proof. The proof is made in the first instance when the relation and the personal intervention of the party claiming the benefit is shown. The law is not so impracticable as to refuse to take notice of the influence of greed and selfishness upon human conduct, and in the case supposed it wisely interposes by adjusting the quality and measure of proof to the circum-

stances, to protect the weaker party and, as far as may be, to
make it certain that trust and confidence have not been per-
verted or abused." (*In re Smith*, 95 N. Y. 522.)

The principle has been applied to a great variety of con-
tracts and dispositions of property between persons standing
in the same or similar relations to each other. (*Nesbit* v.
*Lockman*, 34 N. Y. 167; *Marx* v. *McGlynn*, 88 id. 357;
*Green* v. *Roworth*, 113 id. 462.)

The learned referee, we think, failed, in disposing of the
facts, to give such application to this rule as the testimony and
the circumstances of the case required, and, hence, the
General Term was warranted in reversing the judgment. The
burden was cast upon the defendant of showing that the
nature of the transaction was fully understood and compre-
hended by the other party, and the proofs did not warrant
that conclusion.

. It is said that the deed was ratified by the instrument of
April 2, 1885, appointing Starkey as trustee in the place of
Hall. It is not shown that Mrs. Crouse had then any
knowledge or information that the paper was not in its terms
and legal effect what she intended it to be. In order to effect
a ratification of such an act it is necessary to show that the
party intended such a result after knowledge of all the facts,
and especially the important fact, that it did not conform to
her intentions. If there was any ratification whatever it
applied to the instrument as intended and understood, and not
to the instrument as it was.

It is urged that the instrument of revocation is inoperative
to annul a deed, as it was not under seal and was not delivered,
upon the principle that a deed can only be modified or revoked
by an instrument of equal solemnity. The signature to the
paper is followed by the letters L. S. in brackets. She evi-
dently intended to seal the instrument, and where that inten-
tion is manifest upon the paper itself, a court of equity will
assume that it is sealed or grant the same relief as though a
common-law seal was attached. (*Town of Solon* v. *Wil-
liamsburgh Savings Bank*, 114 N. Y. 134.) The instrument,

however, which transferred the bonds to the trustees and beneficiaries, though under seal, was a mere assignment of personal property, and would have been precisely as effectual if no seal had been affixed. The seal, therefore, added nothing to the solemnity, force or effect of the instrument, and if a provision for future revocation was intended to be inserted, so as to make it revocable in fact, that result could have been accomplished by any instrument, in writing, signed by the party authorized to revoke. Delivery was not essential to the validity of the revocation. The instrument was not a contract between parties, but an act manifesting the intention to exercise a power conferred or reserved. If there was any question here in regard to the validity of the acts of the trustees with respect to the property, or their good faith in acting under the deed, or the rights of third persons, then the question of delivery and notice might be important, but the only question is whether enough was done to effect a revocation as between the parties. In the absence of some provision in such an instrument pointing out the way in which it is to be revoked, that result is accomplished by the execution of any instrument intended for that purpose, and which sufficiently expresses the intention of the party executing the same.

The other questions appearing upon the record disclose no grounds for disturbing the judgment, and it should be affirmed, with costs, and judgment absolute ordered for the plaintiff.

All concur.

Judgment affirmed.