### DISBROW v. DISBROW et al.

(Supreme Court, Appellate Division, First Department. June 10, 1898.)

1. CANCELLATION OF DEED—UNDUE INFLUENCE—BURDEN OF PROOF.

Where the son and confidential adviser of an inexperienced woman pro cures her to convey her property to him, even though the deed reserves to her a life estate and a power of disposition, the burden of showing that the nature of the transaction was fully understood by the grantor is upon the grantee, in an action to set aside the deed.

2. SAME—EVIDENCE.

In an action by a mother to set aside a conveyance of real property made by her to her sons, it appeared that what she wished was merely to fortify her will devising the same to them, but not to limit her own absolute rights during life. One of them led her, without explaining the difference, to execute a deed which at least complicated her rights. *Held,* on the evidence, that the deed was not her free, voluntary, and intelligent act.

Patterson, J., dissenting.

Appeal from special term, New York county.

Action by Sarah M. Disbrow against Griffin B. Disbrow and another. From a judgment for plaintiff, defendant Disbrow appeals. Affirmed.

The action is to set aside a deed of the premises No. 128 West 130th street, in the city of New York, made by the plaintiff on April 27, 1892, to the two defendants, her sons. The deed states that the plaintiff, "in consideration of love and affection and the sum of one dollar, * * * doth hereby grant and release unto the said parties of the second part [the defendants], their heirs and assigns, forever [the premises, describing them], to have and to hold the above-granted premises unto the said parties of the second part, their heirs and assigns, forever, subject to a mortgage of two thousand dollars, and subject also to the use of the said premises by the party of the first part during the term of her natural life, and subject also to her right to sell the same and take the proceeds during such time," etc. The evidence shows that both the plaintiff's husband, who died in February, 1892, and herself, had intended to cut off two of their sons, Charles and Robert, from any share in their property; that both made wills accordingly, the plaintiff leaving the property in question to the defendants; that later her husband was induced to alter his will in favor of one of the sons whom he had cut off; and that this led to considerable litigation after his death. Further facts are stated in the opinion.

Argued before BARRETT, PATTERSON, McLAUGHLIN, and O'BRIEN, JJ.

Jacob F. Miller, for appellant.

James R. Fancher, for respondent.

BARRETT, J. The question here is in the main one of fact. The learned trial justice has found that the making of the deed in question was not the free, voluntary, intelligent act of the plaintiff. He has also found that, owing to the confidential relations of the parties, the burden of showing that she fully understood and appreciated the nature of the transaction rested upon the defendants. Upon these findings he directed that the deed be canceled. We have gone over the evidence with care, and we think that it amply supports these findings. Indeed, we cannot see how the learned trial justice could have reached any other conclusion than he did. The

court was not called upon to give a precise construction to this deed. The material consideration is that, however it may be construed, it is not what the plaintiff believed it to be, nor what she was led by the defendant Griffin B. Disbrow to believe it to be. She was unquestionably misled as to the nature and effect of the instrument. What she desired was to retain the full and free power of disposition and enjoyment during her own life, and yet to secure to the defendants upon her death whatever might then remain undisposed of; in other words, without limiting her own rights during life, to fortify her testamentary disposition in their favor. It is said that what she thus desired could not legally be effectuated; that it was tantamount to desiring the preparation and execution of a deed which would be nugatory. That may be; but she should have been told as much. Neither the appellant nor the attorney who prepared the deed advised her fully and fairly on this head. She was an inexperienced woman, and she leaned upon her son Griffin. He had had entire charge of her husband's affairs for many years prior to that gentleman's death. He had even been in the habit, during this period, of paying by his own checks his father's and mother's household bills. After his father's death, he united with his mother and his brother George in the contest of the will. He was the active and ruling spirit in that contest. He was bound up with her in every step that was taken. He even acted as her trustee in a deed made by his brother Robert to George and himself, providing a life interest in certain property on 108th street for her benefit. It is difficult to appreciate the force of his learned counsel's claim that there is not a syllable of evidence in the case showing that Griffin was his mother's confidential adviser. Upon the contrary, we find that he was in substance the only one upon whom she leaned, and upon whose business experience and judgment she relied. As to the deed, that was practically his work. He originated the idea, and he counseled and enforced its execution. The learned trial justice was certainly justified in crediting the plaintiff's testimony on this head; and it fully supports these conclusions. It is true that he used no physical violence,—a fact which he brought out upon the trial with great emphasis, and quite as though he believed it to be crucial; but, nevertheless, his mother was completely under his control. She testified as follows:

"I was pretty well under his control. I was under his control in business matters. I did what he told me in business matters up to that time. I knew he knew it better than I did, because he was transacting my business, and I thought it was an advantage to my business. I thought I had to go and sign away my property."

All the evidence tends to show that this kind of control—that of a trusted son and confidential adviser earnestly pressing upon her his superior judgment and will—was exercised. It was he, not she, who directed the attorney to prepare the deed. He assured her that this deed did not affect her right in the property at all; that she could still do what she pleased with it; that it would simply "strengthen her will" at her death. She had no independent legal advice on this head. Mr. Miller was but nominally her attorney.

He was really acting for Griffin in this particular matter. Indeed, it is only in this view that he escapes criticism; for if he were, in any genuine sense, Mrs. Disbrow's attorney, the court would be compelled to condemn his conduct in defending this action as Griffin's attorney, and in going upon the witness stand to defeat her. The truth is Mrs. Disbrow had no idea of parting with her property during her life, or of limiting her absolute power of disposition and enjoyment thereof. She had, however, observed the uncertainties attendant upon the probate of wills; and she lent a ready ear to Griffin's suggestion of a plan whereby the fulfillment of her testamentary dispositions could be guarantied. Instead of frankly acknowledging that this could not be done, they induced her to sign a deed which she did not understand, and which certainly complicated her ordinary freedom of conveyance,—a deed which purports to vest the property absolutely in Griffin and George, subject to her enjoyment of a life use thereof, and subject, further, to a doubtful provision as to the extent of her enjoyment of the proceeds in case of a sale. It is said that she should have understood what she signed. That is a singular argument in view of the fact that even the learned counsel are not agreed as to the precise meaning and effect of this instrument. The truth is that nothing was easier than to deceive this woman as to its meaning and effect. She was led to believe one thing, and she has certainly signed quite another. The case is clearly within the principle enunciated in Boyd v. De La Montagne, 73 N. Y. 498, and Barnard v. Gantz, 140 N. Y. 249, 35 N. E. 430.

Upon both of the grounds specified by the court below, we think that the judgment setting aside the deed was right, and should be affirmed, with costs. All concur, except PATTERSON, J., dissenting.