(79 App. Div. 502.)

## BABCOCK v. CLARK.

(Supreme Court, Appellate Division, Fourth Department.   January 6, 1903.)

1. UNDUE INFLUENCE—EVIDENCE—QUESTION FOR JURY.

Three days before the death of a feeble woman, 79 years of age, she gave defendant a deed to all her real estate, and checks on banks for her balance on deposit, and a contract was executed whereby defendant was to support her.  In an action by her administrator it appeared that all her previous express intentions as to her final disposition of her property were at variance with such conduct, and that she had repeatedly refused to make any disposition for her support.  *Held*, that it was a question for the jury whether defendant was in a position to exercise a controlling influence over the will and conduct of deceased.

2. SAME—EVIDENCE—SUFFICIENCY.

The facts were sufficient to warrant a finding of fraud and undue influence.

3. SAME—COMPLAINT—ALLEGATIONS—SUFFICIENCY.

In an action by an administrator the complaint alleged that defendant, knowing the enfeebled mental condition of decedent, and fraudulently contriving to take advantage of her, persuaded her during her last sickness to deed him her real estate and give checks for moneys she had in a bank, defendant knowing at the time that she was not of sound mind; and that he induced such actions by undue influence.  *Held*, that the allegations of fraud and undue influence were set out with sufficient particularity.

Appeal from trial term, Jefferson county.

Action by Lamont M. Babcock, as administrator of the estate of Martha Tisdale, deceased, against Samuel J. Clark.  From a judgment for plaintiff, defendant appeals.  Affirmed.

Argued before ADAMS, P. J., and SPRING, WILLIAMS, HISCOCK, and NASH, JJ.

W. A. Nims, for appellant.

John N. Carlisle, for respondent.

NASH, J.  The action is for the conversion of moneys which belonged to Martha Tisdale, plaintiff's intestate.  The complaint alleges that at and immediately prior to her death the intestate was the owner of certain moneys deposited in her name in the Watertown Savings Bank to the amount of $983, and in the Jefferson County Savings Bank to the amount of $1,350.27; amounting in all to the sum of $2,333.27; that on the day of her death, viz., the 27th day of December, 1901, the defendant, without any right or authority whatever, drew or procured said moneys to be drawn from said Watertown Savings Bank and Jefferson County Savings Bank, and converted the same to his own use, except the sum of $733, deposited by him in his name in the Watertown Savings Bank, and for which sum this plaintiff has commenced an action in equity.  The complaint further alleges that decedent was a maiden lady, and during practically her entire life had resided on a farm in the town of Watertown, Jefferson county, N. Y., and about six months prior to her

¶ 3. See Cancellation of Instruments, vol. 8, Cent. Dig. §§ 76, 78; Deeds, vol. 16, Cent. Dig. § 559.

death removed to the city of Watertown, and purchased a house and lot, and in addition to this house and lot the balance of her property consisted of the moneys deposited as aforesaid, together with a small amount of household effects. The complaint contains a further allegation as follows:

"That said deceased at the time of her death was seventy-nine years of age, and during the last months of her life was sickly, and in an enfeebled condition, and had lost her mind and control over her faculties, so as to be wholly incompetent to do any business; and the said defendant, knowing of her enfeebled mental and physical condition, and that she was susceptible or liable to be easily influenced and deceived, and knowing of the large amount of property owned by her, and fraudulently contriving and intending to take advantage of her weakened physical infirmities and mental condition to get from her all her property, fraudulently induced and persuaded her during her last sickness to deed him her real estate and give her checks for the moneys she had on deposit in said banks as aforesaid, and, knowing she was not of sound mind, by fraud and undue influence caused or induced her to execute said checks on said banks aforesaid, and with the same fraudulent purpose and design drew said moneys from said bank, and by said acts procured from said deceased all her property, excepting a small amount of household effects."

In the charge to the jury the question as to mental capacity and undue influence was submitted by the court without exception. The court further charged:

"In this case the argument is that, by reason of the situation which has been described to you, the fact of these parties living there so closely, and the circumstances in which they then lived, that there really was such a condition that the woman, in executing this contract and the checks, was not acting from her own free voluntary will. Upon that subject you will have to consider the nature of the transaction so far as it may bear upon that particular point. In that line there is another principle which you should bear in mind. The general rule is that, where one party is so situated as to exercise a controlling influence over the will and conduct of another, transactions between them should be scrutinized with extreme diligence, and clear evidence is required that the transaction was understood, and that there was no fraud, mistake, or undue influence. When such a relation exists, there must be clear proof of the integrity and fairness of the transaction, or the instrument will be deemed invalid and void. In this case, upon the evidence here, it would be for you to say whether or not the situation of these parties was such that the defendant was in a position to exercise a controlling influence over the will and conduct of Miss Tisdale. If you are of the opinion that that was the situation, then this is a case where the transaction should be scrutinized with extreme vigilance, and clear evidence should be required that the transaction was understood and appreciated."

Mr. Emerson, on behalf of the defendant, then said:

"I take exception to that part of your honor's charge where you said that, 'when one party is so situated as to exercise a controlling influence over another, clear evidence of freedom from fraud is required,' as applicable to this case. The Court: You may except to whatever I said about it. Mr. Emerson: I ask your honor to charge the jury that there is no evidence in this case that the defendant was so situated as to exercise a controlling influence over the deceased. The Court: I think that is so aside from any possible influence from circumstances; no direct inference at least. I will put it in the way I have put it. I decline to charge except as I have. Mr. Emerson: I take an exception to the refusal and to the charge as made. I ask your honor to charge the jury that the burden is upon the plaintiff in this case to establish by a fair preponderance of evidence the existence of undue influence or want of legal capacity on the part of deceased to execute the contracts and checks. The Court: Primarily, that is so. It is so applicable

as to the question of mental capacity. Upon the question of undue influence the burden is upon the plaintiff to show that, but he may show such a condition as might throw the burden upon the defendant to show that the transaction was fair. Mr. Emerson: I take exception to the qualification as made and to the charge as made. I ask your honor to charge that, if the jury find that the checks Exhibits 3 and 7 were the free and voluntary acts of Martha Tisdale at the time she executed them, and she comprehended and understood their terms and effect and nature of her property, the verdict must be for the defendant. The Court: Yes. Mr. Emerson: I ask your honor to charge that, before the plaintiff can recover, the burden is upon him to establish by a fair preponderance of evidence that the contract Exhibit 12, and these checks Exhibits 3 and 7, were not the free and voluntary act of Martha Tisdale. The Court: I have charged that, except as to the modification that I suggested before, as to whether or not the jury should find that such a condition existed that would throw the burden upon the defendant to show that the transaction was fair. Mr. Emerson: You charge that with the qualification of the burden of proof? The Court: Yes. Mr. Emerson: I except to the qualification. I ask your honor to charge that, before the plaintiff can recover on the ground of undue influence or fraud, he must establish that such fraud or undue influence were exercised as deprived Martha Tisdale of her free will. The Court: That is so, except as to the qualification as to the burden of proof. Mr. Emerson: And as to that qualification you will give us an exception. I ask your honor to charge on the question of undue influence that there is no testimony in the case that the execution of the contract Exhibit 12 or the checks Exhibits 3 and 7 were procured by undue influence practiced upon Martha Tisdale by the defendant, or by his authority. The Court: I will say there is no direct evidence, if that is what you want. Mr. Emerson: You leave it to the jury to infer from the circumstances? The Court: Aside from that. Mr. Emerson: I take an exception." Mr. Nims made the following request on behalf of the defendant: "That undue influence cannot be inferred from mere opportunity, but must be established affirmatively. The Court: That is right."

In the charge as originally made and as charged pursuant to these several requests of defendant's counsel, the court stated to the jury, in substance, that, if the relations of the parties were such that the defendant was in a position to exercise a control over the mind and conduct of Miss Tisdale, then the jury should be satisfied that the woman understood what she was doing, and appreciated the nature of the transaction. That, if such was the nature of the relation existing between the parties, it threw the burden upon the defendant to show that the transaction was fair. The question whether such conditions existed that the defendant was in a position to exercise a controlling influence over the acts of Miss Tisdale was expressly left to the jury, where in compliance to the request to charge "that, before the plaintiff can recover, the burden is upon him to establish by a fair preponderance of evidence that the contract Exhibit 12 and these checks Exhibits 3 and 7 were not the free and voluntary act of Martha Tisdale," the court said, "I have charged that, except as to the modification that I suggested before, as to whether or not the jury should find that such a condition existed that would throw the burden upon the defendant to show that the transaction was fair"; and also expressly so charged pursuant to the request to charge "that undue influence cannot be inferred from mere opportunity, but must be established affirmatively." The question to be determined here is whether the charge thus made was correct, and, if so, whether there was sufficient evidence upon which to find, in the absence of further explanation, that the contract between

Miss Tisdale and the defendant, and the checks in satisfaction thereof, were procured by fraud and undue influence. The facts are not in dispute. The circumstances under which this feeble woman, 79 years of age, on the verge of dissolution from old age, and within three days of her death, transferred her property to the defendant, are most extraordinary. First. The deed by which the decedent conveyed to the defendant without consideration her house and lot of the value of $1,500. Second. The transfer by check of the entire amount, exactly computed, of her two deposits in the savings banks, $2,333.27 in all, as a consideration for her support and maintenance the remainder of her natural life, which, it was apparent to Clark, was a matter of but a few days. The employment of a contract for her support as the means of furnishing a consideration for the transfer of the bank deposits has the appearance of a subterfuge—a pretense—resorted to for the purposes of the transfer rather than an actual compensation or benefit to the decedent. This is especially so in view of the fact that, until this time the Clarks had done for her precisely the things the contract provided for, with checks drawn upon the interest on her bank accounts, and rendered services for which they were entitled to compensation,—an arrangement which had been mutually satisfactory. It required the most satisfactory evidence that this departure from all previously expressed intentions with regard to the final disposition which would be made of her property, so at variance with her repeated refusals to make any disposition of her property for her support other than to keep control of it herself, was the result of the free, uninfluenced, and voluntary will of the decedent. A careful consideration of the facts and circumstances of the case as shown by the evidence leads to the conclusion that it is one which required the court to leave it to the jury to say whether or not the situation of the parties was such that the defendant was in a position to exercise a controlling influence over the will and conduct of Miss Tisdale, and, if they were of that opinion, then it was a case where the transaction should be scrutinized with extreme vigilance, and clear evidence should be required that the transaction was understood and appreciated; also that the evidence is sufficient to support the finding of the jury. Barnard v. Gantz, 140 N. Y. 249, 35 N. E. 430; Ten Eyck v. Whitbeck, 156 N. Y. 341, 50 N. E. 963. The allegations of fraud and undue influence are set out in the complaint with sufficient particularity.

Judgment and order affirmed, with costs. All concur.