JACK ARAKJINJIAN, Appellant, *v.* CHARLES ARAKIAN et al., Respondents.

First Department, June 2, 1944.

*Irwin Neugeboren* of counsel (*Irwin Neugeboren* and *Milton Greenwald*, attorneys), for appellant.

*Isidore Faber* for respondents.

COHN, J. The action is brought in conversion against defendants, who are husband and wife. The complaint sets forth two causes of action. The first cause alleges embezzlement and misappropriation by defendant Charles Arakian of the proceeds of the sale of a bond and mortgage belonging to plaintiff. In the second cause of action it is charged that defendant Marie Arakian, with knowledge of the conversion, received the proceeds of the transaction from her husband and wrongfully withheld them from plaintiff.

At the time of the trial plaintiff was seventy-five years of age. He was unmarried and resided alone in New York City. Of Armenian extraction, he was unable to read or write in any language. Defendant Charles Arakian is plaintiff's first cousin.

On the evening of April 19, 1938, Charles was summoned to the home of the plaintiff because of the latter's illness. A physician called by Charles, after examining plaintiff, directed his removal to a hospital. Charles escorted plaintiff to a hospital the following day where plaintiff remained confined for some time.

Plaintiff was the owner of a bond and mortgage in the principal sum of $6,500 covering certain real property. This investment was the only important asset of which he was possessed. On the day he entered the hospital, plaintiff, for a consideration of $5,047 to be paid thereafter, executed an assignment of the bond and mortgage to a purchaser obtained by Charles. For

effecting the sale, Charles, without plaintiff's knowledge, received a commission of $150 from the purchaser. Beginning on April 28th checks were received in payment of the bond and mortgage. These were indorsed by plaintiff, delivered to Charles, who deposited them in his own bank account. From the proceeds the hospital and medical expenses of plaintiff were to be paid. As to the moneys remaining, plaintiff says the understanding was that such sums were to be returned to him. On the other hand, defendant Charles claims that his agreement with plaintiff was that Charles was to retain the balance in consideration of which he was to support plaintiff for the remainder of his life. It is to be noted that by plaintiff's will, which was executed about a week before he entered the hospital, Charles was to get but two thirteenths of plaintiff's property.

With the moneys thus obtained defendant Charles made several investments. He says that these were made with plaintiff's consent and approval. One such investment was in a lease of a summer hotel at Tannersville, New York. Charles had no prior experience as a hotel man — he was a tailor. Yet, he disbursed between $2,000 and $3,000 in outfitting and running the hotel. When plaintiff was discharged from the hospital in July, 1938, he proceeded to the hotel in the Catskill Mountains and remained as a guest until the hotel closed for the season. Plaintiff then lived with defendants at their home in New York City.

Admittedly defendant Charles delivered to Marie, the other defendant, the sum of $2,300 out of funds received from the sale of the mortgage. According to Charles this transfer was made because there was no bank in the Catskills near the hotel. It was necessary, he said, to have cash available in New York City for the purchase of needed supplies for the hotel. The money intrusted to Marie was apparently used for that purpose. The hotel venture resulted in a financial loss.

Charles testified that when he returned to the city in the fall of 1938, plaintiff wished to purchase a tailor shop to be managed by Charles. Accordingly, out of what was left of plaintiff's funds a tailoring business was bought which Charles conducted. This enterprise lasted for four or five months. Charles stated that upon the sale of this business he delivered the proceeds thereof, amounting to $400, to plaintiff.

In March, 1939, plaintiff left the home of defendants. He says that he was forced out by Charles who told him that all he brought was trouble, though defendants say he left voluntarily.

Aside from the alleged agreement of support, defendants urge as a complete defense that the moneys expended for plaintiff's benefit, together with the hotel and tailor shop investments made with his approval, equalled or exceeded the money intrusted to Charles. Plaintiff denies that he ever authorized any of the investments and asserted that defendants refused to return to him the proceeds of the sale of the mortgage, less his hospital bills, although many demands were made.

At the close of the case the trial court dismissed the complaint " on the ground that the plaintiff has failed to sustain his burden of proof that the defendants were guilty of conversion."

Though plaintiff had the burden of establishing the allegations of the complaint by a fair preponderance of the evidence, we think that after the relationship of the parties and the circumstances under which plaintiff parted with the proceeds of the mortgage had been shown, it then became incumbent upon defendants to show affirmatively that no deception had been practiced, no undue influence had been employed and that everything was fair, open, voluntary and well understood. (*Cowee* v. *Cornell*, 75 N. Y. 91, 99–100; *Matter of Will of Smith*, 95 N. Y. 516, 522; *Barnard* v. *Gantz et al.*, 140 N. Y. 249, 256–258; *Babcock* v. *Clark*, 79 App. Div. 502, 507.)

Where, as here, an old, enfeebled, illiterate man suffering from a severe and confining ailment is alleged to have stripped himself of all his property upon an oral promise of a younger relative that the latter would support him for life in consideration of the transfer of such property, a case is made which imposes upon defendants as the stronger parties the burden of satisfying the court that there was no fraud or improper influence. " When such a relationship of dominance of one party exists, however, as is ordinarily the case where there is a fiduciary or confidential relation between the parties, the courts of equity hold that it raises a presumption of undue influence and throws upon the dominant party the burden of establishing the fairness of the transaction and that it was the free act of the other party." The principle is applied " where a child has obtained a conveyance from an aged parent by means of an agreement to support." (5 Williston on Contracts [Rev. ed.], § 1625A.)

In *Rosevear* v. *Sullivan* (47 App. Div. 421) the following pertinent language enunciates the law (p. 423) : " While it may be said that the agreement to support, if fairly made upon a full understanding by the parties, dealing upon terms of substantial

equality, would furnish a good consideration for the deed, yet where they do not so deal and where one party has the advantage of the other, then the burden is upon the stronger party to furnish satisfactory proof that the transaction was in all respects fair. (*Matter of Will of Smith,* 95 N. Y. 516; *Cowee* v. *Cornell,* 75 id. 91.) And if there be failure in this regard, constructive fraud will be presumed. (*Green* v. *Roworth,* 113 N. Y. 462.) ''

Applying the rule heretofore stated to the circumstances of this case, we think that plaintiff established his cause of action against defendant Charles Arakian by a fair preponderance of the evidence, and that this defendant did not furnish satisfactory proof that the transaction was in all respects fair, voluntary and well understood. Failure of defendant Charles to pay over the money intrusted to him by plaintiff upon a seasonable demand constituted a conversion. (*Britton* v. *Ferrin,* 171 N. Y. 235, 242.) The judgment insofar as it directed a dismissal of the complaint as to this defendant was contrary to the weight of the credible evidence.

As to the second cause of action which is directed against defendant Marie Arakian, the proof was insufficient to establish a conversion by her. The $2,300 which she received from defendant Charles was paid out either to Charles or to plaintiff. She had no direct dealings with plaintiff, took no interest in the hotel venture or the purchase of the tailoring business and so far as the evidence shows, she had no knowledge that plaintiff's money was being converted by her husband.

Defendant Charles received from plaintiff, in all, the sum of $5,197. This includes the commission of $150 admittedly obtained by him for the benefit of plaintiff. Plaintiff conceded that the hospital bill in the amount of $281.25 had been paid and that he had received a check of $550 and the sum of $40 in cash. Upon the record, we also find that there was expended in small amounts for plaintiff an additional total sum of $517.85. We find, too, that at the time of the sale of the tailor shop plaintiff received $400 in cash. Crediting defendant Charles with each of these sums, we hold that plaintiff is entitled to judgment against defendant Charles Arakian for the balance, to wit, the sum of $3,407.90, with interest, together with the costs and disbursements of this action. This disposition is, of course, without prejudice to any claim defendants may have against plaintiff for support and maintenance for the months the latter lived with them.

The judgment should be modified by striking out so much thereof as dismisses the complaint as to the defendant Charles

Arakian and directing entry of judgment for the plaintiff against said defendant as indicated in this opinion, and as so modified, affirmed, with costs to the plaintiff against the defendant Charles Arakian, and with costs to the defendant Marie Arakian against the plaintiff.

MARTIN, P. J., TOWNLEY, UNTERMYER and DORE, JJ., concur.

Judgment unanimously modified by striking out so much thereof as dismisses the complaint as to the defendant Charles Arakian and directing entry of judgment for the plaintiff against said defendant as indicated in opinion, and as so modified, affirmed, with costs to the plaintiff against the defendant Charles Arakian, and with costs to the defendant Marie Arakian against the plaintiff. Settle order on notice.