Morris Eder, J.
Petitioners and respondents move with respect to the referee’s report to confirm what is favorable, and disaffirm what is unfavorable, to their respective interests. The court adopts the recommendations made by the referee at the conclusion of his exhaustive report save as to the income tax surcharge item, the applicable facts of which do not appear to have been presented to him in complete form.
The principal issue relates to a surcharge in the amount of $25,445.27 for improper investments in “ non-legals ” by the deceased trustee.
The trust indenture dated May 20, 1932 empowered the trustee, who was settlor’s only son, to retain any and all securities transferred to him in his discretion and without responsibility for any loss, “ hut upon the sale or other disposition of any of the securities originally transferred to the said trustee, the trustee shall invest and reinvest the proceeds resulting from any sale or other disposition of securities only in such manner *311 as is permitted by the laws of the State of New York for the investment of trust funds.” The property transferred and set forth in a schedule attached was in the total inventoried amount of $146,914.21 and consisted of two bonds and mortgages on real property and “ interest of 46.875% of the Donor in the following securities ”, listing United States .Treasury certificates, industrial bonds and common stocks. These securities were then held in an account maintained by settlor, her son and his wife with a firm of investment counsellors in order to meet the latter’s requirement of a minimum qualifying balance for a fund under their supervision. Following the execution of the trust indenture the only purchases of the fund were in ££ legal ’ ’ investments. Then, on November 9, 1932, a second document amending the first was executed, permitting the trustee to invest and reinvest the proceeds resulting from the sale of securities transferred to him ££ in such manner and in such securities as in the discretion of the Trustee would be to the best interests of the Trust.” In the ££ Whereas ” clause thereof it is stated that it ££ was ” the intention of the parties at the time of the indenture to permit such investments and reinvestments ££ in the discretion of the Trustee without in any way limiting him. ’ ’
The indenture was expressly made irrevocable. There is, of course, no implied power to revoke or amend, and a trust may not be modified after its creation in the absence of a reservation clause where property rights of beneficiaries thereunder, whose consent is not obtained, are involved. Under the trust, settlor’s sister was to receive the income for life; upon her death, the corpus was to be distributed to settlor’s children — trustee and his two sisters — and, in the event of the death of any of them prior to their aunt, the share of the deceased child was to go to his or her issue per stirpes. The amendatory document of November 9, 1932 was executed by the settlor, the aunt and the three children — all the adults involved. But there were then in being six grandchildren of settlor, who because of infancy were incapable of giving consent.
If the second document be construed as a purported amendment to the trust, then it must be held to be ineffectual for failure to comply with section 23 of the Personal Property Law, since the written consent of ££ all the persons beneficially interested ” had not been procured. The consent of grandchildren then living who have a contingent interest as remaindermen is required by the statute (Schoellkopf v. Marine Trust Co., 267 N. Y. 358). Although the adults who executed this document are barred thereafter from objecting to reinvestments *312 made by the trustee in accordance with its terms — and, indeed, have interposed no objection in this proceeding — the attempted amendment is wholly ineffective to bind any other persons beneficially interested in the trust. Objections have been filed by the “ living grandchildren ”, now adults, and by infant great-grandchildren subsequently born, through guardians ad litem appointed by the court.
The trustee died in 1950 and the account filed by his executors showed that he had made numerous investments in nonlegals, not only during the three years that the investment “fund” was maintained with the investment counsellors, but at all times thereafter as well. There was a net gain in all these security transactions, but the objectants have invoked the established rule that a trustee cannot offset gains realized on certain unauthorized transactions against losses occasioned on other unauthorized transactions. This is the risk taken by a fiduciary. The beneficiaries may accept such investments as they choose and reject the others, thus requiring the trustee to make good the loss suffered in the latter group of separate investments (King v. Talbot, 40 N. Y. 76; Matter of Buck, 55 N. Y. S. 2d 841; 3 Bogert on Trusts and Trustees, pp. 433-434).
The original petition filed by the executors of deceased trustee and the successor trustee merely asked for a construction of the two documents with regard to the investment powers thereunder, in addition to a judicial settlement of trustee’s account. Subsequently, an amended and supplemental petition was filed, alleging that there had been a mistake by the “scrivener” of the trust indenture in limiting the reinvestment power of the trustee contrary to settlor’s intention and instructions at the time and asking for a declaration that the November 9, 1932 document “effectively reformed” the original indenture to state her intention correctly that the trustee be empowered to make such investments in his discretion.
If, in fact, there was a scrivener’s error in transcribing settlor’s intention at the time of creating the trust, it is correctible by the court in an action to reform the instrument (Delap v. Leonard, 189 App. Div. 87; Leitner v. Goldwater, 48 N.Y.S. 2d 614, affd. 269 App. Div. 657; Vogel v. City Bank Farmers Trust Co., 152 Misc. 18) or in an action, such as here attempted, to make an actual reformation of the instrument in settlor’s lifetime effective (Barnard v. Gantz, 140 N. Y. 249). But the evidence before the court to establish that such was the original intention of settlor — thus dispensing with the necessity of obtaining the consent of any beneficiaries — and not an afterthought on her part or change of intention — which does require *313 consent of all persons beneficially interested — must be “ clear ” (Ludlam v. Ludlam, 194 App. Div. 411, affd. sub nom. Ludlam v. Connecticut Trust & Safety Deposit Co., 232 N. Y. 615). The burden of adducing such clear proof is, of course, upon those who assert that settlor misunderstood the nature of the paper executed by her. In all the cases where reformation was granted by the court, petitioner presented direct and convincing evidence of the necessary facts of settlor’s original intentions and instructions and of the mistake in the instrument as drawn.
In this proceeding, both settlor and trustee are dead, and petitioners presented no direct evidence of any kind as to her original intention. They relied entirely on circumstantial evidence, i.e., the ‘1 Whereas ’ ’ clause in the second document that it “ was ” her intention not to limit the trustee and the fact that the securities turned over to the trustee consisted merely of an interest in the securities, including nonlegals, maintained in a fund which was obviously intended to be operated as a trading account as to which any limitation of investment power would be impractical.
As to the contents of the “amendatory” document, since they are self-serving declarations, no weight can be given to them insofar as it is urged that they tend to prove what her original intention was. Otherwise, a settlor could “ reform ” a trust without the need of securing the consent of all beneficiaries by the mere employment of apt language.
As the referee has held after an analysis of all factors, the petitioners must be deemed to have failed to sustain the burden cast upon them. Their proof was to the effect that the son, who was a lawyer, must have prepared these documents, and, presumably, that it would be unnautral for him to insert the “impractical” limitation clause in the indenture and therefore it should be adjudged to have been a “scrivener’s mistake”. Whatever the real facts, it is clear that both settlor and her son were educated persons and must have read and understood this lengthy and express limitation clause deliberately inserted in the indenture, particularly in the case of the son who as the “ scrivener ” would necessarily have been conscious of the very words he was using to express that intention. This is not a situation of a mere omission, concerning which there may be doubt as to whether through inadvertence instructions have not been followed, but of a clearly expressed and complete clause. Answering the “ practical ” argument, it may be that the mother was willing to contribute her securities to help meet the Tninimn-m requirements of the fund, but insisted stubbornly on her son being limited, at least as to her interest therein, to *314 “legáis”, being later convinced, however, to change her mind. Confirmation of this view that the parties knew of the limitation at the time and that it was a deliberate act is found in the fact that only legáis were purchased until the subsequent document was executed, by which time, it may be, trustee had persuaded settlor to change the investment clause. The fact that all adult beneficiaries were requested to sign that document also tends to support this interpretation, although it could be that caution alone induced settlor to request their signatures. The best that can be said for petitioners’ position is that the surrounding circumstances are somewhat equivocal. But the lack of convincing evidence pointing unmistakably to the second document being simply a correction of a scrivener’s error compels the conclusion that it was an attempted amendment which cannot be given effect because of failure to comply with statutory requirements.
The amount of the surcharge is to be paid to the successor trustee and kept in a specially earmarked fund. Since the income beneficiary of the trust, as one of the signers of the amendatory instrument, consented to trustee’s not being limited in his investments, the income of the earmarked fund is to be paid to the estate of deceased trustee. Upon her death, the persons entitled as remaindermen to distribution of the corpus of the trust and of this fund will be known. If the sisters of deceased trustee survive their aunt, their share of the fund will become returnable to the estate of deceased trustee, since they also signed the amendatory document (Matter of Hall, 164 N. Y. 196; Matter of Davenport, 104 N.Y.S. 2d 433; Matter of Dodge, 39 N.Y.S. 2d 186).
The contingent remaindermen also objected to the charging to capital of income tax paid by deceased trustee on 1944 net rentals received from real property. This was originally included in the property given by settlor as a bond and second mortgage. After default by the owner, trustee obtained a deed and in turn executed an assignment of the rents to the first mortgagee. The 1944 rentals were in accordance therewith turned over to the first mortgagee; the life tenant did not receive any part of these rents. Trustee having received the rents as income was obliged to pay an income tax thereon; but, having paid them over and used them to preserve a capital asset, properly charged the tax to capital.
With regard to this objection as well as the others involving the question of allocations or payments claimed to prefer the life tenant over the remaindermen, it must be kept in mind that trustee was himself a vested remainderman and that his own *315 self-interest would dispose him not to favor unduly the life tenant. Moreover, the trust indenture gave the trustee full power to exercise all rights, subject to its provisions, “ in the same manner as if he were the absolute owner of the trust fund ”, expressly including the power “ to determine whether any expenses or other monies received or paid out by him shall be charged against or credited to principal or income of any trust hereby created, such determination to afford full protection to the said trustee.” Under such a provision the trustee’s determination is controlling, unless he has abused the discretion conferred upon him in a plain case as to which there can be no doubt (3 Scott on Trusts [2d ed.], p. 1775). Surely, the charging to capital of this income tax cannot be deemed an abuse of discretion under the circumstances disclosed. This objection is therefore overruled.
Nor was there any abuse of discretion in trustee’s paying to life tenant the net rentals received in the last six months of 1945 when, about the time of the sale of the real property to a third party, the first mortgagee waived its lien under the assignment and permitted trustee to retain said rentals. Object-ants urge that these rentals should be viewed as constituting part of the purchase price and thus includible as capital. Trustee evidently paid the rentals to the life tenant in the belief that, as rent, they constituted income. It cannot be said that the issue is entirely free from doubt. The trustee’s good faith in determining that payment should be made to the life tenant is not impugned. It follows that he cannot be personally surcharged for exercising his discretion as he did.
This ruling applies to the other objections addressed to other alleged improper allocations which the referee recommended be overruled.
Settle order on or before December 17, 1956, providing for the foregoing and declaring that the November 9, 1932 instrument did not effectively reform or amend the trust indenture so as to permit deceased trustee or any successor trustee to make investments other than as permitted by the laws of this State. Counsel are to submit at that time affidavits of services and memoranda as to allowances, which will be provided in the order. The court will at that time also dispose of the claim for past income commissions, which though not objected to, has been brought to its attention by one of the guardians.